## SCOTT *v.* THE CITY OF WORCESTER.

*(Circuit Court, D. Connecticut.   January 24, 1891.)*

SALVAGE—COMPENSATION.

An iron steam-ship, valued at $235,000, struck upon a reef, and lay in an exposed situation, liable to grind on the boulders and increase her injuries.   Libelant was employed by her owners to save her, and was instructed by them to employ assistance.   The salvors conducted operations with energy, and pulled the vessel off the reef and into port for repairs a week after she struck.   Her repairs costs $35,000. Libelant's equipment engaged in the service was worth about $25,000, and the equipment hired by him was worth about $80,000.   One of libelant's vessels struck on the reef, and had to be repaired for two days.   The bill of the employes of libelant at schedule rates was $13,525.50.   At the same rates, libelant's bill for his equipment, exclusive of his personal service, which consisted of supervision of the whole work, would be about $8,600.   *Held,* that an award of $31,733.32 would not be reduced on appeal.

In Admiralty.

*Wing, Shoudy & Putnam,* for appellant.

*Samuel Park,* for appellee.

WALLACE, J.    This is a libel for salvage services rendered by the libelant and the Merritt Wrecking Organization to the steam-ship City of Worcester.    The steam-ship, while running in a fog in Long Island sound on the morning of Sunday, January 12, 1890, struck upon Bartlett's reef.    Bartlett's reef lies near the entrance of New London harbor, and is sprinkled with rocks and boulders.    The City of Worcester was an iron steam-ship, of the value of about $235,000.    As she lay upon the reef after she struck, her keel forward was on the boulders in about six feet of water, and she was afloat behind her after gangway.    She was in an exposed situation in the event of a gale from the south-east, being liable to grind upon the boulders, and thereby materially increase her injuries, and the difficulty and expense of getting her off.    The libelant was a contracting salvor at New London, and the Merritt Wrecking Organization was a contracting salvor at New York city, and each of them maintained an equipment of wrecking apparatus and a force of employes for salvage services.    The passengers and cargo on board the steam-ship were removed during the day of January 12th.    On that day the libelant was engaged by the president of the company owning the steam-ship to undertake the work of saving her.    Inasmuch as libelant's equipment was insufficient to proceed with the desired dispatch, he was instructed by the president of the steam-ship company to employ the Merritt Wrecking Organization to assist him.    The libelant accordingly engaged the Merritt Wrecking Organization by telegram.    On the morning of Monday, the 13th, the equipment and men of the Merritt Wrecking Organization arrived, and operations were begun with a view to haul the steam-ship off the reef.    Owing to rough weather, but little was accomplished that day, beyond removing the furniture, and doing some work on her injuries inside the forward compartment.    On Tuesday, the 14th, the divers began the work of stopping her leaks.    This work occupied until Saturday.    The water was then pumped out by the aid of 10 steam-pumps, and on the evening of Sunday, the 19th, she was pulled off the reef, and towed to New London for repairs.    The day the steam-ship struck the reef two of her five compartments filled with water.    Her injuries consisted of a crack about 30 feet long upon the port side forward, terminating in a hole under one of the port boilers.    On Monday the boulders wore a couple of additional holes in her bottom, and another compartment filled.    It cost about $35,000 to repair the injuries she received.    The operations of the salvors were conducted with energy and efficiency, but they did not involve any unusual difficulty or hazard beyond the ordinary risks to vessels and divers working about a reef in soundings of from 6 to 20 feet.    Throughout, except on Monday, the weather was fair and the sea smooth.    One of the libelant's steamers struck upon the reef, and was compelled to undergo repairs for two days.    One of the steamers of the Merritt Wrecking Organization also struck upon the rock, but was got off in about 20 minutes.    The equipment of the Merritt Wrecking Organization employed in the service was worth about $80,000, and that of the libelant about $25,000. The Merritt Wrecking Organization furnished the steamers Merritt, Cy-

clops, and Dalzell, eight steam-pumps, two divers and their apparatus, seven engineers, nineteen wreckers, one carpenter, two firemen, one foreman, and an agent or superintendent, with the usual outfit of cables, ropes, hose, and anchors; also the barge Blanche and the schooner Edgar Post. The libelant furnished the steamers Alert, T. A. Scott, Cassie, and Chester, three lighters, four divers and apparatus, two steam-pumps, four engineers, two firemen, and from 18 to 20 wreckers. The libelant had general charge of the work, and was present more or less of the time during its progress. The superintendent of the Merritt Wrecking Organization assisted in the supervision and direction of the work. The master, first mate, steward, and some of the crew of the steam-ship remained on board during the week, and assisted the salvors more or less. After the services were performed, the Merritt Wrecking Organization, at the request of the steam-ship company, made out a statement for the rent of its equipment and the wages of its employes engaged in the service, amounting to $13,525.50. The items were charged according to its regular schedule rates for the hire of equipment and men for wrecking services when performed under contract stipulating for the return of the equipment in like condition as received, excepting ordinary wear and tear. At the same rate of charges for the use of steamers, steam-pumps, and other wrecking apparatus, and for divers, engineers, and other employes, the libelant would be entitled to compensation for his part of the salvage services, exclusive of his personal efforts, to the sum of about $8,600. Before this libel was filed, the owners of the steam-ship paid to the Merritt Wrecking Organization $10,000, and to the libelant $1,-500, to apply on account of the salvage services.

Upon these facts it cannot be said that the award made by the district court of $31,733.52, less the sums paid by the owners of the steam-ship, is so excessive that it ought to be reduced by an appellate court. As was said by this court in *The Baker*, 25 Fed. Rep. 773:

"The allowance of salvage is necessarily largely a matter of discretion, which cannot be determined with precision by the application of exact rules. Different minds, in the exercise of independent judgment upon the same evidence, seldom coincide exactly in their views of the facts, or give the same prominence to the varied elements which make up the case. An approximate concurrence is all that can be expected. For this reason, appellate courts are not disposed to interfere with decrees in salvage cases merely because the sum allowed the salvors is larger than the appellate court would have allowed; and the circuit courts of the United States are influenced by this view."

It has been uniformly declared that an appellate court will not interfere with the decision of the court below with respect to the amount of salvage awarded, unless the judgment has proceeded upon an erroneous principle, or is manifestly excessive or inadequate. *Hobart* v. *Drogan*, 10 Pet. 108; *The Comanche*, 8 Wall. 448; *The Connemara*, 108 U. S. 352, 2 Sup. Ct. Rep. 754; *The Sappho*, L. R. 3 P. C. 695; *Gann* v. *Brun*, 12 Moore P. C. 341; *Green* v. *Bailey*, Id. 346; *The Scindia*, L. R. 1 P. C. 241; *The True Blue*, Id. 250; *The Chetah*, L. R. 2 P. C. 205. Where ew proofs are not taken in the circuit court, or when, if taken, they do

not materially change the merits, there is no reason why the circuit court should not observe the rule. *The Emulous,* 1 Sum. 214; *Scott* v. *Four Hundred and Forty-five Tons Coal,* 40 Fed. Rep. 260. If a contract had been made in advance for the use of the equipment and hire of the employes of the salvors, the latter would have been entitled to compensation amounting to about $22,000, irrespective of any allowance for the risk of injury to their equipment. Very likely that sum, with an allowance added for risk to equipment, would represent a fair return for their investment and expenses, in view of the general conditions and chances of the business in which they were engaged. But, no contract of that kind having been made, they are entitled in addition to a reward, not only for the promptness and energy displayed in the particular service, but also by way of encouragement to others to assume the risk of such enterprises, and go with zeal to the assistance of vessels in distress. In view of the labor expended, the value of their property employed, the risk incurred to that property, the value of the steam-ship, and the urgency of her situation, it cannot be doubted that the salvors should receive compensation considerably in excess of the value of the hire of their equipment and men, and of the mere risk encountered.

A decree is ordered for the libelants for $20,233.52, with interest from the date of the decree of the district court, together with the costs of that court and of this court.